UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 APR -4  PM 4: 30

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CEMEX, S.A.B. de C.V.,<br><br>Defendant. | CASE NO.:<br><br>07cv640<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: |

FILED
APR 10 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.  "Acquirer" or "Acquirers" means the entity or entities to whom defendant divests some or all of the Divestiture Assets.

B.  "Aggregate" means crushed stone and gravel produced at quarries, mines, or gravel pits used for, among other things, the production of ready mix concrete and concrete block.

C.  "Cemex" means defendant Cemex, S.A.B. de C.V., a Mexican corporation with its headquarters in Nuevo León, Mexico, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D.  "Concrete block" means a building material used in the construction of

residential and commercial structures that is produced at a plant by mixing cementitious material, aggregate, chemical additives, and water, and placing that mixture in molds of various sizes.

  E.  "Divestiture Assets" means:

    1.  the following Ready Mix Concrete plants:

    a.  **Fort Walton Beach/Panama City/Pensacola, Florida Area**

      i.  Rinker's Crestview plant, located at 5420 Fairchild Road, Crestview, FL 32539;

      ii.  Rinker's Fort Walton plant, located at 1787 FIM Boulevard, Fort Walton Beach, FL 32547;

      iii.  Rinker's Milton plant, located at 6250 Da Lisa Road, Milton, FL 32583;

      iv.  Rinker's Panama City plant, located at 1901-B East 15th Street, Panama City, FL 32405;

      v.  Rinker's Panama City Beach plant, located at 17750 Hutchinson Road, Panama City Beach, FL 32407;

      vi.  Rinker's Pensacola plant, located at 415 Hyatt Street, Pensacola, FL 32503;

      vii.  Rinker's Port St. Joe plant, located at 1145 Industrial Road, Port St. Joe, FL 32456;

      viii.  Rinker's Point Washington plant, located at the intersection of East Highway 98 and Old Ferry Road, Santa Rosa Beach, FL 32459;

    b.    **Jacksonville, Florida Area**

        i.    Defendant's Main Street plant, located at 9214 North Main Street, Jacksonville, FL 32218;

        ii.    Defendant's Southside Florida Mining Boulevard plant, located at 9715 East Florida Mining Boulevard, Jacksonville, FL 32223;

    c.    **Orlando, Florida Area**

        i.    Defendant's East Orlando plant, located at 7400 Narcoossee Road, Orlando, FL 32822;

        ii.    Defendant's Goldenrod plant, located at 4000 Forsyth Road, Winter Park, FL 32792;

        iii.    Defendant's Winter Garden plant, located at 201 Hennis Road, Winter Garden, FL 34787;

        iv.    Rinker's Kennedy plant, located at 1406 Atlanta Avenue, Orlando, FL 32806;

    d.    **Tampa/St. Petersburg, Florida Area**

        i.    Rinker's Clearwater plant, located at 3757 118th Avenue North, Clearwater, FL 33762;

        ii.    Rinker's Odessa plant, located at 12025 State Road 54, Odessa, FL 33556;

        iii.    Rinker's Odessa Keys plant, located at 11913 State Road 54, Odessa, FL 33556;

        iv.    Rinker's Riverview plant, located at 6723 South 78th Street, Riverview, FL 33569;

        v.    Rinker's Tampa plant, located at 6106 East Hanna Avenue, Tampa, FL 33610;

        vi.    Rinker's Tampa Keys plant, located at 1811 North 57th Street, Tampa, FL 33619;

e.    **Fort Myers/Naples Florida Area**

        i.    Rinker's Ave Maria plant, located at 4811 Ave Maria Boulevard, Immokalee, FL 34142;

        ii.    Rinker's Bonita Springs plant, located at 25061 Old U.S. Highway 41 South, Bonita Springs, FL 34135;

        iii.    Rinker's Canal Street plant, located at 4262 Canal Street, Fort Myers, FL 33916;

        iv.    Rinker's Cape Coral (Pine Island) plant, located at 2401 SW Pine Island Road, Cape Coral, FL 33991;

        v.    Rinker's Naples plant, located at 9210 Collier Boulevard, Naples, FL 34114;

        vi.    Rinker's South Fort Myers plant, located at 7270 Alico Road, Fort Myers, FL 33912;

f.    **Flagstaff, Arizona Area**

Defendant's Brannen plant, located at 633 East Brannen Avenue, Flagstaff, Arizona 86001;

4

    g.    **Tucson, Arizona Area**

        i.    Defendant's Ina plant, located at 5400 West Massingale Road, Tucson, AZ 85743;

        ii.    Rinker's Green Valley plant, located at 18701 South Old Nogales Highway, Sahuarita, AZ 85629;

        iii.    Rinker's Poorman Road plant, located at 6500 South Old Spanish Trail, Tucson, AZ 85747;

        iv.    Rinker's Valencia plant, located at 1011 West Valencia Road, Tucson, AZ 85706;

2.    the following Concrete Block plants:

    a.    **Tampa/St. Petersburg, Florida Area**

        i.    Rinker's Odessa plant, located at 12025 State Road 54, Odessa, FL, 33556;

        ii.    Rinker's Palmetto plant, located at 600 9th Street West, Palmetto, FL, 34221;

        iii.    Rinker's Tampa plant, located at 6302 North 56th Street, Tampa, FL 33610;

    b.    **Fort Myers/Naples, Florida Area**

        i.    Rinker's Bonita Springs plant, located at 25091 Old U.S. Highway 41 South, Bonita Springs, FL 34135;

        ii.    Rinker's Coral Rock plant, located at 41451 Cook Brown Road, Punta Gorda, FL 33982;

      iii. Rinker's South Fort Myers plant, located at 7270 Alico Road, Fort Myers, FL 33912;

3. the following **Tucson, Arizona Area** Aggregate plants:

  a. Defendant's Ina plant, located at 5400 West Massingale Road, Tucson, AZ 85743;

  b. Rinker's Green Valley plant, located at 18701 South Old Nogales Highway, Sahuarita, AZ 85629;

4. all tangible assets used in the plants listed in paragraphs I(E)(1)-(3), including all research and development activities, manufacturing equipment, tooling and fixed assets, real property (leased or owned), mining equipment, personal property, inventory, aggregate reserves, office furniture, materials, supplies, on- or off-site warehouses or storage facilities relating to the plants; all licenses, permits and authorizations issued by any governmental organization relating to the plants; all contracts, agreements, leases (including renewal rights), commitments, and understandings relating to the plants, including supply agreements; all customer lists, contracts, accounts, and credit records relating to the plants; all other records relating to the plants; and at the option of the Acquirer or Acquirers, a number of trucks and other vehicles usable at the plants listed in paragraphs II(E)(1)-(3) equal to, for each separate type of truck or other vehicle, the average number of trucks and other vehicles of that type used at each such plant per month during the months of operation of the plant

6

between January 1, 2006 and December 31, 2006 (calculated by averaging the number of trucks and other vehicles of each type that were used at each plant at any time during each month that the plant was in operation), but such trucks and vehicles need not include any equipment related to defendant's "ReadySlump" process, so long as the trucks and other vehicles are fully operable without such equipment; and

5. all intangible assets used in the development, production, servicing, and distribution of products by the plants listed in paragraphs I(E)(1)-(3), including but not limited to all contractual rights, patents, licenses and sublicenses, intellectual property, technical information, computer software (including dispatch software and management information systems) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information provided to the employees, customers, suppliers, agents or licensees, and all research data (including aggregate reserve testing information) concerning historic and current research and development efforts relating to the plants listed in paragraphs I(E)(1)-(3), including, but not limited to designs of experiments, and the results of successful and unsuccessful designs and experiments.

F.      "Ready mix concrete" means a building material used in the construction of buildings, highways, bridges, tunnels, and other projects that is produced by mixing a cementitious material and aggregate with sufficient water to cause the cement to set and bind.

G.      "Rinker" means Rinker Group Limited, an Australian corporation with its headquarters in Chatswood, Australia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

H.      "Divestiture Trigger" means the day on which Cemex elects a majority of the Board of Directors of Rinker or forty-five (45) days after Cemex obtains a number of shares of Rinker stock in excess of 50 percent of the outstanding shares of Rinker, whichever is sooner.

## II. OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure defendant's prompt divestiture of the Divestiture Assets, for the purpose of maintaining competition in the production and distribution of ready mix concrete in certain areas of Florida and Arizona; of concrete block in the areas of Tampa, Fort Myers, and Naples, Florida; and of aggregate in the area of Tucson, Arizona, to remedy the effects that the United States alleges would otherwise result from Cemex's acquisition of Rinker. This Hold Separate Stipulation and Order ensures that, prior to such divestitures, the Divestiture Assets remain independent, economically viable, and ongoing business concerns that will remain independent and uninfluenced by Cemex's acquisition of Rinker, and that competition is maintained during the pendency of the ordered divestitures.

## III. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of plaintiff's Complaint alleging that

8

the proposed acquisition of Rinker by Cemex would violate Section 7 of the Clayton Act (15 U.S.C. § 18), and defendant does not object either to the Court's exercise of personal jurisdiction in this case, or to the propriety of venue of this action in the United States District Court for the District of Columbia.

### IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.  The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendant and by filing that notice with the Court.

B.  Defendant shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Hold Separate Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an Order of the Court.

C.  Defendant shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D.  This Hold Separate Stipulation and Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.   In the event: (1) the United States has withdrawn its consent, as provided in paragraph IV(A); or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.   Defendant represents that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendant later will raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. HOLD SEPARATE PROVISIONS

Until the divestitures required by the Final Judgment have been accomplished:

A.   Defendant shall preserve, maintain, and continue to operate those Divestiture Assets owned by defendant prior to an acquisition of Rinker as ongoing, economically viable competitive businesses. From the date of the Divestiture Trigger, defendant shall preserve, maintain, and continue to operate those Divestiture Assets owned by Rinker prior to an acquisition by defendant as ongoing, economically viable competitive businesses. Defendant shall maintain the management, sales, and operations of all assets owned by defendant prior to an acquisition of Rinker entirely separate, distinct, and apart from the assets owned by Rinker prior to an acquisition by defendant. Defendant shall not coordinate the production, marketing, or terms of sale of any of its products with those produced by or sold under any assets owned by

Rinker prior to an acquisition by defendant. Within twenty (20) days after the entry of this Hold Separate Stipulation and Order, defendant will inform the United States of the steps defendant has taken to comply with this Hold Separate Stipulation and Order.

      B.    Defendant shall take all steps necessary to ensure that: (1) the Divestiture Assets will be maintained and operated as ongoing, economically viable and active competitors in the ready mix concrete, concrete block, and aggregate businesses; (2) management of the Divestiture Assets owned by Rinker prior to an acquisition by defendant will not be influenced by defendant; and (3) the books, records, competitively sensitive sales, marketing, and pricing information, and decision-making concerning production and distribution of products by or under any assets owned by defendant prior to an acquisition of Rinker will be kept separate and apart from the assets owned by Rinker prior to an acquisition by defendant.

      C.    Defendant shall use all reasonable efforts to maintain and increase the sales and revenues of the products produced by or sold under the Divestiture Assets, and shall maintain at 2007 or previously approved levels for 2008, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets.

      D.    Defendant shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as economically viable and competitive, ongoing businesses, consistent with the requirements of paragraphs V(A) and (B).

      E.    Defendant shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and sales, and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

      F.    Defendant shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign,

transfer, pledge or otherwise dispose of any of the Divestiture Assets.

G.   Defendant shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

H.   Defendant shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

I.   Defendant's and Rinker's employees involved in production, operations, and sales at the Divestiture Assets shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to defendant's and Rinker's regular, established job posting policy. Defendant shall provide the United States with ten (10) calendar days notice of such transfer.

J.   Defendant shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

K.   This Hold Separate Stipulation and Order shall remain in effect until: (1) the consummation of the divestitures required by the proposed Final Judgment; (2) further order of the Court; or (3) the United States' voluntary dismissal of the Complaint in this matter.

Dated: April 4, 2007

Respectfully submitted,

| FOR PLAINTIFF | FOR DEFENDANT |
|---|---|
| UNITED STATES OF AMERICA: | CEMEX, S.A.B. de C.V.: |
| _/s/ Frederick H. Parmenter_ | _/s/ John E. Beerbower_ |
| Frederick H. Parmenter, Esquire | John E. Beerbower, Esquire |
| United States Department of Justice | Cravath, Swaine & Moore LLP |
| Antitrust Division, Litigation II Section | Worldwide Plaza |
| 1401 H St., NW, Suite 3000 | 825 Eighth Avenue |
| Washington, DC 20530 | New York, New York 10019-7475 |
| (202) 307-0620 | (212) 474-1864 |

### ORDER

IT IS SO ORDERED by the Court, this 10th day of April 2007.

_/s/ Royce C. Lamberth_
United States District Judge