# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>CEMEX, S.A.B. de C.V. and<br>RINKER GROUP LIMITED,<br><br>        Defendants. | CASE NO.: 1:07-cv-00640<br><br>JUDGE: Hon. Royce C. Lamberth<br><br>DECK TYPE:  Antitrust<br><br>DATE STAMPED RECEIVED<br><br>MAY  2 2007 |

CHAMBERS OF
JUDGE LAMBERTH

## FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Amended Complaint on May 2, 2007, and plaintiff and defendants, Cemex, S.A.B. de C.V. ("Cemex") and Rinker Group Limited ("Rinker"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Cemex agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Cemex to assure that competition is not substantially lessened;

AND WHEREAS, plaintiff requires Cemex to make certain divestitures for the purpose of remedying the loss of competition alleged in the Amended Complaint;

FILED

AUG 3 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AND WHEREAS, Cemex has represented to the United States that the divestitures required below can and will be made and that Cemex will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Amended Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. **Definitions**

As used in this Final Judgment:

A.      "Acquirer" or "Acquirers" means the entity or entities to whom Cemex divests some or all of the Divestiture Assets.

B.      "Aggregate" means crushed stone and gravel produced at quarries, mines, or gravel pits used for, among other things, the production of ready mix concrete and concrete block.

C.      "Cemex" means defendant Cemex, S.A.B. de C.V., a Mexican corporation with its headquarters in Nuevo León, Mexico, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

2

D.    "Concrete block" means a building material used in the construction of residential and commercial structures that is produced at a plant by mixing cementitious material, aggregate, chemical additives, and water, and placing that mixture in molds of various sizes.

E.    "Divestiture Assets" means:

1.    the following Ready Mix Concrete plants:

a.    **Fort Walton Beach/Panama City/Pensacola, Florida Area**

i.    Rinker's Crestview plant, located at 5420 Fairchild Road, Crestview, FL 32539;

ii.    Rinker's Fort Walton plant, located at 1787 FIM Boulevard, Fort Walton Beach, FL 32547;

iii.    Rinker's Milton plant, located at 6250 Da Lisa Road, Milton, FL 32583;

iv.    Rinker's Panama City plant, located at 1901-B East 15th Street, Panama City, FL 32405;

v.    Rinker's Panama City Beach plant, located at 17750 Hutchinson Road, Panama City Beach, FL 32407;

vi.    Rinker's Pensacola plant, located at 415 Hyatt Street, Pensacola, FL 32503;

vii.    Rinker's Port St. Joe plant, located at 1145 Industrial Road, Port St. Joe, FL 32456;

3

        viii.    Rinker's Point Washington plant, located at the intersection of East Highway 98 and Old Ferry Road, Santa Rosa Beach, FL 32459;

**b.    Jacksonville, Florida Area**

        i.    Cemex's Main Street plant, located at 9214 North Main Street, Jacksonville, FL 32218;

        ii.    Cemex's Southside Florida Mining Boulevard plant, located at 9715 East Florida Mining Boulevard, Jacksonville, FL 32223;

**c.    Orlando, Florida Area**

        i.    Cemex's East Orlando plant, located at 7400 Narcoossee Road, Orlando, FL 32822;

        ii.    Cemex's Goldenrod plant, located at 4000 Forsyth Road, Winter Park, FL 32792;

        iii.    Cemex's Winter Garden plant, located at 201 Hennis Road, Winter Garden, FL 34787;

        iv.    Rinker's Kennedy plant, located at 1406 Atlanta Avenue, Orlando, FL 32806;

**d.    Tampa/St. Petersburg, Florida Area**

        i.    Rinker's Clearwater plant, located at 3757 118th Avenue North, Clearwater, FL 33762;

ii.    Rinker's Odessa plant, located at 12025 State Road 54, Odessa, FL 33556;

iii.    Rinker's Odessa Keys plant, located at 11913 State Road 54, Odessa, FL 33556;

iv.    Rinker's Riverview plant, located at 6723 South 78th Street, Riverview, FL 33569;

v.    Rinker's Tampa plant, located at 6106 East Hanna Avenue, Tampa, FL 33610;

vi.    Rinker's Tampa Keys plant, located at 1811 North 57th Street, Tampa, FL 33619;

e.    **Fort Myers/Naples, Florida Area**

i.    Rinker's Ave Maria plant, located at 4811 Ave Maria Boulevard, Immokalee, FL 34142;

ii.    Rinker's Bonita Springs plant, located at 25061 Old U.S. Highway 41 South, Bonita Springs, FL 34135;

iii.    Rinker's Canal Street plant, located at 4262 Canal Street, Fort Myers, FL 33916;

iv.    Rinker's Cape Coral (Pine Island) plant, located at 2401 SW Pine Island Road, Cape Coral, FL 33991;

v.    Rinker's Naples plant, located at 9210 Collier Boulevard, Naples, FL 34114;

vi.     Rinker's South Fort Myers plant, located at 7270 Alico Road, Fort Myers, FL 33912;

f.    **Flagstaff, Arizona Area**

Cemex's Brannen plant, located at 633 East Brannen Avenue, Flagstaff, AZ 86001;

g.    **Tucson, Arizona Area**

i.     Cemex's Ina plant, located at 5400 West Massingale Road, Tucson, AZ 85743;

ii.    Rinker's Green Valley plant, located at 18701 South Old Nogales Highway, Sahuarita, AZ 85629;

iii.   Rinker's Poorman Road plant, located at 6500 South Old Spanish Trail, Tucson, AZ 85747;

iv.    Rinker's Valencia plant, located at 1011 West Valencia Road, Tucson, AZ 85706;

2.    the following Concrete Block plants:

a.    **Tampa/St. Petersburg, Florida**

i.     Rinker's Odessa plant, located at 12025 State Road 54, Odessa, FL, 33556;

ii.    Rinker's Palmetto plant, located at 600 9th Street West, Palmetto, FL, 34221;

iii.   Rinker's Tampa plant, located at 6302 North 56th Street, Tampa, FL 33610;

6



b.    **Fort Myers/Naples, Florida Area**

      i.    Rinker's Bonita Springs plant, located at 25091 Old U.S.

          Highway 41 South, Bonita Springs, FL 34135;

      ii.   Rinker's Coral Rock plant, located at 41451 Cook Brown

          Road, Punta Gorda, FL 33982;

      iii.  Rinker's South Fort Myers plant, located at 7270 Alico

          Road, Fort Myers, FL 33912;

3.    the following **Tucson, Arizona** area Aggregate plants:

a.    Cemex's Ina plant, located at 5400 West Massingale Road,

      Tucson, AZ 85743;

b.    Rinker's Green Valley plant, located at 18701 South Old Nogales

      Highway, Sahuarita, AZ 85629;

4.    all tangible assets used in the plants listed in paragraphs II(E)(1)-(3),

including all research and development activities, manufacturing

equipment, tooling and fixed assets, real property (leased or owned),

mining equipment, personal property, inventory, aggregate reserves, office

furniture, materials, supplies, on- or off-site warehouses or storage

facilities relating to the plants; all licenses, permits and authorizations

issued by any governmental organization relating to the plants; all

contracts, agreements, leases (including renewal rights), commitments, and

understandings relating to the plants, including supply agreements; all

customer lists, contracts, accounts, and credit records relating to the plants;

7

all other records relating to the plants; and at the option of the Acquirer or Acquirers, a number of trucks and other vehicles usable at the plants listed in paragraphs II(E)(1)-(3) equal to, for each separate type of truck or other vehicle, the average number of trucks and other vehicles of that type used at each such plant per month during the months of operation of the plant between January 1, 2006 and December 31, 2006 (calculated by averaging the number of trucks and other vehicles of each type that were used at each plant at any time during each month that the plant was in operation), but such trucks and vehicles need not include any equipment related to Cemex's "ReadySlump" process, so long as the trucks and other vehicles are fully operable without such equipment; and

5.      all intangible assets used in the development, production, servicing, and distribution of products by the facilities listed in paragraphs II(E)(1)-(3), including but not limited to all contractual rights, patents, licenses and sublicenses, intellectual property, technical information, computer software (including dispatch software and management information systems) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information provided to the employees, customers, suppliers, agents or licensees, and

8

all research data (including aggregate reserve testing information) concerning historic and current research and development efforts relating to the plants listed in paragraphs II(E)(1)-(3), including, but not limited to designs of experiments, and the results of successful and unsuccessful designs and experiments.

F.     "Ready mix concrete" means a building material used in the construction of buildings, highways, bridges, tunnels, and other projects that is produced by mixing a cementitious material and aggregate with sufficient water to cause the cement to set and bind.

G.     "Rinker" means defendant Rinker Group Limited, an Australian corporation with its headquarters in Chatswood, Australia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

H.     "Divestiture Trigger" means the day on which Cemex elects a majority of the Board of Directors of Rinker or forty-five (45) days after Cemex obtains a number of shares of Rinker stock in excess of 50 percent of the outstanding shares of Rinker, whichever is sooner.

### III. Applicability

A.     This Final Judgment applies to Cemex, as defined above, and all other persons in active concert or participation with Cemex who receive actual notice of this Final Judgment by personal service or otherwise.

B.     Cemex shall require, as a condition of the sale or other disposition of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, that the purchaser agrees to be bound by the provisions of this Final Judgment.

9

## IV. Divestitures

A.      Cemex is ordered and directed, within one hundred twenty (120) calendar days after the Divestiture Trigger, or five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period, not to exceed in total sixty (60) calendar days, and shall notify the Court in each such circumstance. Cemex agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestitures ordered by the Final Judgment, Cemex promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Cemex shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Unless the United States otherwise consents in writing, Cemex shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that customarily are provided in a due diligence process except such information or documents subject to the attorney-client or work-product privilege. Cemex shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Unless the United States otherwise consents in writing, Cemex shall provide the Acquirer or Acquirers and the United States information relating to personnel involved in production, operations, and sales at the Divestiture Assets to enable the Acquirer or Acquirers to

make offers of employment. Cemex will not interfere with any negotiations by the Acquirer or Acquirers to employ any employee of the Divestiture Assets whose primary responsibility is production, operations, or sales at the Divestiture Assets.

   D.  Unless the United States otherwise consents in writing, Cemex shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, and other documents and information customarily provided as part of a due diligence process.

   E.  Cemex shall warrant to the Acquirer or Acquirers that those Divestiture Assets owned by Cemex prior to an acquisition of Rinker will be operational on the date of the divestiture. In addition, with respect to those Divestiture Assets owned by Rinker prior to an acquisition by Cemex, Cemex shall warrant to the Acquirer or Acquirers that those Divestiture Assets will be operational on the date of the divestiture, if they were operational on the date Cemex acquires a number of shares of Rinker stock in excess of 50 percent of the outstanding shares of Rinker.

   F.  Cemex shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

   G.  Cemex shall warrant to the Acquirer or Acquirers that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of those Divestiture Assets owned by Cemex prior to an acquisition of Rinker. In addition, with respect to those Divestiture Assets owned by Rinker prior to an acquisition by Cemex, Cemex shall

11

warrant to the Acquirer or Acquirers that there are no material defects in the environmental,

zoning, or other permits pertaining to the operation of those Divestiture Assets, if there are no

material defects in the environmental, zoning, or other permits pertaining to the operation of

those Divestiture Assets on the date Cemex acquires a number of shares of Rinker stock in

excess of 50 percent of the outstanding shares of Rinker. Cemex shall not undertake, directly or

indirectly, any challenges to the environmental, zoning, or other permits relating to the operation

of the Divestiture Assets.

H.      If for any reason Cemex is unable within the time period required by paragraph

IV(A) to divest any of the Divestiture Assets or make any of the Divestiture Assets available for

sale by the trustee appointed pursuant to Section V, or if for any reason Cemex does not make the

warranties in paragraphs IV(E) and (G) with respect to the assets owned by Rinker prior to an

acquisition by Cemex, for each such asset, the United States, in its sole discretion, may select one

or more alternative assets owned by Cemex that are located or used in the same geographic area

(as identified in boldface type in section II(E)) to be divested in lieu of the Divestiture Asset that

could not be divested. Unless the United States consents otherwise in writing, divestiture of an

alternative Cemex asset shall include all tangible and intangible assets associated with that asset,

as defined in paragraph II(E).

I.      Unless the United States otherwise consents in writing, any divestiture pursuant to

Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include

the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United

States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer or

Acquirers as viable, ongoing businesses engaged in producing and distributing ready mix

12

concrete, concrete block, and/or aggregate, that the Divestiture Assets will remain viable, and

that the divestiture of such assets will remedy the competitive harm alleged in the Amended

Complaint.  The sale of the Divestiture Assets may be made to one or more Acquirers, so long

as:  (1) all of the ready mix concrete plants in a geographic area (as identified in boldface type in

section II(E)) are divested to a single Acquirer; (2) all of the concrete block plants in a

geographic area are divested to a single Acquirer; (3) both aggregate plants listed in paragraph

II(E)(3) are divested to the same Acquirer that acquires the ready mix concrete plants listed in

paragraphs II(E)(1)(g)(i)-(iii); and (4) in each instance it is demonstrated in a manner acceptable

to the United States in its sole discretion that the Divestiture Assets will remain viable and the

divestiture of such Divestiture assets will remedy the competitive harm alleged in the Amended

Complaint.  The divestitures, whether pursuant to Section IV or Section V of this Final

Judgment,

    1.     shall be made to an Acquirer or Acquirers that, in the United States's sole

         judgment, has the intent and capability (including the necessary

         managerial, operational, technical and financial capability) to compete

         effectively in the production and distribution of ready mix concrete,

         concrete block, and/or aggregate; and

    2.     shall be accomplished so as to satisfy the United States, in its sole

         discretion, that none of the terms of any agreement between an Acquirer or

         Acquirers and Cemex gives Cemex the ability to unreasonably raise the

         Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to

         interfere in the ability of the Acquirer to compete effectively in the

production and distribution of ready mix concrete, concrete block, and/or
aggregate.

J.      If Cemex does not acquire a number of shares of Rinker stock in excess of 50
percent of the outstanding shares of Rinker, Cemex shall divest all its interest in Rinker within
six months from the date this Final Judgment is signed by the Court. Pending such divestiture,
Cemex shall not, directly or indirectly: (1) exercise dominion or control over, or otherwise seek
to influence, the management, direction, or supervision of the business of Rinker; (2) seek or
obtain representation on the Board of Directors of Rinker; (3) exercise any voting rights attached
to the shares; (4) seek or obtain access to any confidential or proprietary information of Rinker;
or (5) take any action or omit to take any action that would have an effect different than if
Cemex's interest in Rinker were that of a purely passive investor.

## V. **Appointment of Trustee to Effect Divestitures**

A.      If Cemex has not divested the Divestiture Assets within the time period specified
in paragraph IV(A), Cemex shall notify the United States of that fact in writing. Upon
application of the United States, the Court shall appoint a trustee selected by the United States
and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a trustee becomes effective, only the trustee shall have
the right to sell the Divestiture Assets. The trustee shall have the power and authority to
accomplish the divestiture to an Acquirer acceptable to the United States at such price and on
such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions
of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court
deems appropriate. Subject to paragraph V(D) of this Final Judgment, the trustee may hire at the

14

cost and expense of Cemex any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.      Cemex shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objection by Cemex must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of Cemex, on such terms and conditions as plaintiff approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Cemex and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.      Cemex shall use its best efforts to assist the trustee in accomplishing the required divestiture.  The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Cemex shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade

15

secrets or other confidential research, development, or commercial information. Cemex shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

      F.      After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

      G.      If the trustee has not accomplished such divestiture within six months after its appointment, the trustee shall promptly file with the Court a report setting forth: (1) the trustee's efforts to accomplish the required divestiture; (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished; and (3) the trustee's recommendations. To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the plaintiff, who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestiture

A.      Within two (2) business days following execution of a definitive divestiture agreement, Cemex or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Cemex. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Cemex, the proposed Acquirer or Acquirers, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer or Acquirers, and any other potential Acquirer. Cemex and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice, or within twenty (20) calendar days after the United States has been provided the additional information requested from Cemex, the proposed Acquirer or Acquirers, any third party, or the trustee, whichever is later, the United States shall provide written notice to Cemex and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Cemex's limited right to object to the sale under paragraph V(C) of this Final Judgment. Absent written

17

notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Cemex under paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  Financing

Cemex shall not finance all or any part of any purchase by an Acquirer of any Divestiture Asset pursuant to Section IV or V of this Final Judgment.

## VIII.  Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, Cemex shall take all steps necessary to comply with the Amended Hold Separate Stipulation and Order entered by this Court.  Cemex shall take no action that would jeopardize the divestiture ordered by this Court.

## IX.  Affidavits

A.      Within twenty (20) calendar days of the Divestiture Trigger, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V, Cemex shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts Cemex has taken to solicit buyers for the Divestiture Assets,

18

and to provide required information to any prospective Acquirer, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Cemex, including limitations on the information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Amended Complaint in this matter, Cemex shall deliver to the United States an affidavit that describes in reasonable detail all actions Cemex has taken and all steps Cemex has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Cemex shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Cemex's earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Cemex shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## X. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Cemex, be permitted:

1.      access during Cemex's office hours to inspect and copy, or at plaintiff's option, to require Cemex to provide copies of, all books, ledgers, accounts,

records and documents in the possession, custody, or control of Cemex, relating to any matters contained in this Final Judgment; and

2.    to interview, either informally or on the record, Cemex's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Cemex.

B.    Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Cemex shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If, at the time information or documents are furnished by Cemex to the United States, Cemex represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Cemex marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Cemex ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

20

### XI. <u>No Reacquisition</u>

Cemex may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

### XII. <u>Retention of Jurisdiction</u>

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIII. <u>Expiration of Final Judgment</u>

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XIV. <u>Public Interest Determination</u>

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

21

comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: ___8/31/07___

Court approval subject to procedures of the Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16.

_____
United States District Judge

22