### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CEMEX, S.A.B. de C.V. and<br>RINKER GROUP LIMITED,<br><br>        Defendants. | CASE NO.: 1:07-cv-00640<br><br>JUDGE: Hon. Royce C. Lamberth<br><br>DECK TYPE:  Antitrust<br><br>DATE STAMPED: |

### JOINT MEMORANDUM OF UNITED STATES, CEMEX, S.A.B. de C.V. AND RINKER GROUP LIMITED TO MODIFY FINAL JUDGMENT

Pursuant to Federal Rule of Civil Procedure 60(b)(5) and Section XII of the Final Judgment entered in this matter on August 31, 2007 ("Final Judgment"),[1] Plaintiff United States of America ("United States") and Defendants Cemex, S.A.B. de C.V. ("Cemex") and Rinker Group Limited ("Rinker") have jointly moved the Court to modify the Final Judgment by entering the proposed Modified Final Judgment submitted with their motion, filed simultaneously herewith.  As stated below, the proposed minor modification is equitable in nature and serves the public interest by effectuating the remedies intended in the Final Judgment; accordingly, Plaintiff and Defendants request that the Court grant the Joint Motion to modify the Final Judgment.

---

[1]        Section XII of the Final Judgment provides that "any party to this Final Judgment . . . [can] apply to this Court at any time . . . to modify any of its provisions." This Court has jurisdiction to modify the Final Judgment pursuant to Paragraph XII of the Final Judgment, Fed. R. Civ. P. 60(b)(5), and "principles inherent in the jurisdiction of the chancery." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *see also In re Grand Jury Proceedings*, 827 F. 2d 868, 873 (2nd Cir. 1987).

# I.

## BACKGROUND

On October 27, 2006, Cemex initiated a hostile cash tender offer to acquire all of the outstanding shares of Rinker for $13.00 a share. On April 4, 2007, the United States filed with the Court a Complaint to prevent Cemex's acquisition of Rinker. Because the transaction involved a hostile cash tender offer and Rinker had not agreed to be acquired, Rinker was not named as a defendant in the Complaint. At the same time the Complaint was filed, the United States filed a Hold Separate Stipulation and Order, which incorporated the terms of a proposed Final Judgment. The Court signed the Hold Separate Stipulation and Order on April 10, 2007, and entered it on April 11, 2007.

On April 9, 2007, Cemex announced that it had entered into a Bid Agreement with Rinker, pursuant to which Cemex agreed to increase its offer to $15.85 a share. As a result of Cemex and Rinker entering into the Bid Agreement, the United States amended its Complaint on April 30, 2007, to include Rinker as a defendant, and Rinker signed and became a party to an Amended Hold Separate Stipulation and Order, which was accompanied by an amended Final Judgment that included Rinker as a party. The Court signed and entered the Amended Hold Separate Stipulation and Order on May 2, 2007.

On August 31, 2007, the Court entered the Final Judgment that had been filed on April 30, 2007. Under the Final Judgment, Cemex must divest the Divestiture Assets as defined in Paragraphs II(E)(1)-(5), which include, among other things, 39 ready mix concrete, concrete block, and aggregate plants that serve metropolitan areas in Florida and Arizona. On September 12, 2007, the United States approved CRH plc ("CRH") as the proposed purchaser of

2

the Divestiture Assets, and on October 4, 2007, Cemex entered into an Asset Purchase

Agreement ("Agreement") with CRH whereby CRH will purchase all of the Divestiture Assets.

Following two extensions of the divestiture period specified in Paragraph IV(A) of the Final

Judgment, Cemex must divest the Divestiture Assets to CRH by December 7, 2007.

One of the plants included in the Divestiture Assets is the Valencia ready mix plant, a

former Rinker plant located in downtown Tucson, Arizona, at 1011 West Valencia Road. *See*

Final Judgment Paragraph II(E)(1)(g)(iv). The Valencia ready mix plant is located on a Cemex-

owned parcel of land of approximately 300 acres, only a small percentage of which is used by the

ready mix plant. The zoning for the land used by the plant is grandfathered to allow operations

of the ready mix plant; the rest of the parcel is zoned for residential use. Cemex became aware

of the zoning issues only after the closing of the Cemex/Rinker merger. Thus, compliance with

the Final Judgment could be accomplished by either: (1) selling the entire parcel to the Acquirer

of the ready mix plant; (2) subdividing the parcel to allow the sale of only the land used by the

ready mix plant; (3) invoking the provision of the Final Judgment to substitute a Cemex ready

mix plant located or used in the same geographic area[2]; or (4) modifying the Final Judgment to

allow a long-term lease to the ready mix plant property rather than a sale of that property.

---

[2]     When the Divestiture Assets were specified in the Final Judgment, Cemex's effort
to acquire Rinker involved a hostile cash tender offer; therefore, Cemex had no access to the
Rinker plants to be divested and could not determine whether obstacles to their divestiture might
exist. In negotiating the Final Judgment, the United States anticipated that issues with divesting
Rinker facilities might arise. As a result, the United States included in the Final Judgment
Paragraph IV(H), which allows the United States to substitute a Cemex plant for a Rinker plant
when Cemex is unable to divest a Rinker plant.

3

Each of the first three options poses difficulties. The sale of the entire parcel would unnecessarily require a Acquirer to purchase land not related to the operation of the ready mix plant. Subdivision of the parcel to allow sale of only the land used by the ready mix plant would require a new zoning application by the Acquirer, approval of which could be delayed as long a year. The Cemex plant that would be substituted for the Valencia plant is co-located on a site with other Cemex facilities, such as a rail yard, that the United States views as necessary for Cemex's continued competitiveness in the Tucson area. Because the prompt divestiture is necessary to remedy the competitive harm alleged in the Complaint, the United States has determined that modifying the Final Judgment to allow a long-term lease of the land used by the Valencia plant is appropriate.

## II.

### THE PROPOSED MODIFICATION SERVE
### THE PUBLIC INTEREST AND SHOULD BE APPROVED.

### A.    Applicable Legal Standard

This Court concluded that entry of the proposed Final Judgment in this matter was in the public interest and entered the Final Judgment on August 31, 2007. In considering proposed modifications of a consent decree, the issue before the Court is whether the modifications are in the public interest. *See e.g., United States v. Western Elec. Co.,* 993 F.2d 1572, 1576 (D.C. Cir. 1993); *United States v. Western Elec. Co.,* 900 F.2d 283, 305 (D.C. Cir. 1990); *United States v. Loew's, Inc.,*783 F. Supp. 211, 213 (S.D.N.Y. 1992); *United States v. Columbia Artists Management, Inc.,*662 F. Supp. 865, 869-70 (S.D.N.Y. 1987) (citing *United States v. Swift & Co.,* 1975-1 Trade Cas. (CCH) ¶ 60,201, at 65,702-03 (N.D. Ill. 1975). *Cf. United States v.*

4

*American Cyanamid Co.,* 556 F. Supp. 361, 367 (S.D.N.Y. 1983), *rev'd on other grounds,* 719
F.2d 558 (2d Cir. 1983). This is the same standard that a federal district court applies in
reviewing an initial consent judgment in a government antitrust case. *See* 15 U.S.C. § 16(e);
*Western Electric,* 900 F.2d at 295; *United States v. AT&T,* 552 F. Supp. 131, 147 n.67 (D.D.C.
1982); *aff'd sub nom Maryland v. United States,* 460 U.S. 1001 (1983); *United States v. Radio
Corp. of Am.,* 46 F. Supp. 654, 656 (D.Del. 1942), *appeal dismissed,* 318 U.S. 796 (1943).

      It has long been recognized that the government has broad discretion in settling
antitrust litigation on terms that will best serve the public interest in competition. *See Sam
Fox Publ'g Co. v. United States,* 366 U.S. 683, 689 (1961). The government may reach
any of a range of settlements that are consistent with the public interest. *See e.g., Microsoft,* 56
F.3d at 1461; *Western Electric,* 900 F.2d at 307-09; *Bechtel,* 648 F.2d at 665-66; *United States
v. Gillette Co.,* 406 F. Supp. 713, 716 (D. Mass. 1975). The court's role in determining
whether the initial entry of a consent decree is in the public interest, absent a showing of abuse
of discretion or a failure to discharge its duty on the part of the government, is to determine
whether the government's explanation is reasoned, and not to substitute its own opinion.
*United States v. Mid-America Dairymen, Inc.,* 1977-1 Trade Cas. (CCH) ¶ 61,508 at 71,980
(W.D. Mo. 1977); *see also United States v. Microsoft Corp.,* 56 F.3d 1448, 1461-62 (D.D.C.
Cir. 1995); *United States v. Bechtel Corp.,* 648 F.2d 660, 666 (9th Cir. 1981) (citing *United
States v. National Broad. Co.,* 449 F. Supp. 1127 (C.D. Cal. 1978). Accordingly, where the
United States has offered a reasonable explanation of why a modification vindicates the public
interest in free and unfettered competition, the modification is clear and provides an adequate
compliance mechanism, and there is no showing of abuse of discretion or corruption affecting the

government's recommendation, the Court should accept the United States's conclusion concerning the appropriateness of the proposed decree modification.

**B.    The Proposed Modification**

The proposed modification is necessary to effectuate the remedies originally intended in the Final Judgment and previously determined by this Court to be in the public interest.

To remedy the situation regarding the Valencia ready mix concrete plant identified at Paragraph II(E)(1)(g)(iv) of the Final Judgment, the United States, Cemex, and Rinker seek to add a new Paragraph II(E)(6) to the Final Judgment, stating:

> with regard to the Valencia ready mix concrete plant identified in paragraph II(E)(1)(g)(iv), a 40-year lease of the real property on which the Valencia ready mix concrete plant is located.

This modification will permit Cemex to substitute a 40-year lease for a transfer of title to the real property on which the Valencia ready mix concrete plant is located. The lease will preserve for the long term the pre-acquisition level of competition in the Tucson ready mix concrete market. The effect of this modification is to preserve the Final Judgment's objectives of maintaining competition in the Tucson ready mix concrete market.

**III.**

**ADDITIONAL PUBLIC NOTICE**
**OF THE PROPOSED FINAL JUDGMENT MODIFICATIONS**
**IS UNNECESSARY AND DOES NOT SERVE THE PUBLIC INTEREST**

The Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16 (b)-(h), does not expressly apply to the modification of entered final judgments.[3] Nonetheless, the United States

---

[3]    The procedures mandated by the APPA govern federal district courts'

and the courts have concluded that notice to the public and an opportunity for comment are appropriate where significant decree modifications are proposed.[4] Here, however, the modification is minor – substituting a 40-year lease for a fee simple sale – and serves only to effectuate what was intended in the Final Judgment. Thus, no notice or public comment period is necessary for a determination that the proposed modification is in the public interest.[5]

---

consideration of "[a]ny proposal for a consent judgment submitted by the United States," 15 U.S.C. § 16(b), and are designed to facilitate a public interest determination "[b]efore entering any consent judgment proposed by the United States," 15 U.S.C. § 16(e).

[4]    *See United States v. AT&T*, 552 F. Supp. 131, 144-45 (D.D.C. 1982), *aff'd. sub nom. Maryland v. United States*, 460 U.S. 1001 (1983).

[5]    Few courts have addressed the issue of the applicability of the APPA to judgment modifications. Courts in this district have made non-material modifications of final judgments without requiring notice to the public and opportunity for comments. *United States v. Tidewater, Inc., et al.*, No. 92-106 (D.D.C. October 7, 1992) (Hogan, J.); *United States v. Baker Hughes*, No. 90-0825 (D.D.C. June 20, 1990) (Oberdorfer, J.).

Two courts have further held that the APPA is not applicable to judgment termination proceedings, suggesting that those courts would not view the APPA as applicable to minor judgment modifications. *United States v. American Cyanamid Co.*, 719 F.2d, 558, 565 n.7; *United States v. General Motors Corp.*, 1983-2 Trade Cas. ¶ 65,614 at 69,093 (N.D. Ill. 1983), *but see United States v. Motor Vehicle Mfrs. Ass'n*, 1981-2 Trade Cas. ¶ 64,370 (C.D. Cal. 1981).

7

## IV. CONCLUSION

For the foregoing reasons, the United States, Cemex, and Rinker respectfully request that

the Court grant the Joint Motion and enter the proposed Modified Final Judgment.

Dated: November 2 2, 2007

        Respectfully submitted,

        FOR PLAINTIFF
        UNITED STATES OF AMERICA

        Frederick H. Parmenter
        VA Bar No. 18184
        U.S. Department of Justice
        Antitrust Division
        Litigation II Section
        1401 H Street, NW, Suite 3000
        Washington, DC 20530
        (202) 307-0620

        FOR DEFENDANT
        CEMEX, S.A.B. de C.V.

        Clifford H. Aronson, Esquire
        Skadden, Arps, Slate, Meagher & From LLP
        Four Times Square
        New York, New York 10036-6522
        (212) 735-2644

FOR DEFENDANT
RINKER GROUP LIMITED

Kevin Arquit, Esquire
Peter C. Thomas, Esquire
Simpson, Thacher & Bartlett
425 Lexington Avenue
New York, New York 10017
(212) 455-7680

9

## CERTIFICATE OF SERVICE

I, Frederick H. Parmenter, hereby certify that on November 27, 2007, I caused a copy of the foregoing Joint Memorandum of United States, Cemex, S.A. de C.V., and Rinker Group Limited to be served on defendants CEMEX, S.A.B. de C.V. and RINKER GROUP LIMITED by mailing the document electronically to the duly authorized legal representatives of each defendant.

Frederick H. Parmenter

Counsel for CEMEX, S.A.B. de C.V.:

Clifford H. Aronson, Esquire
Skadden, Arps, Slate Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522
(212) 735-2644
caronson@skadden.com

Counsel for RINKER GROUP LIMITED:

Kevin Arquit, Esquire
Peter C. Thomas, Esquire
Simpson, Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-7680
pthomas@stblaw.com